**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

GARRISON VILLAGE CONDOMINIUM
ASSOCIATION, INC.,

    Garrison Village,

v.

MAXUM INDEMNITY COMPANY,

    Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

**COMES NOW** Plaintiff, GARRISON VILLAGE CONDOMINIUM ASSOCIATION, INC., by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, MAXUM INDEMNITY COMPANY, and in support of its Complaint, allege and aver as follows:

**NATURE OF THE ACTION**

1.    Garrison Village brings this action seeking economic and non-economic damages arising from Defendant's breach of contract, bad faith conduct, unreasonable delay, and unreasonable denial in the payment of covered benefits due and owing under Garrison Village's first-party insurance contract.

**PARTIES**

2. Plaintiff, Garrison Village Condominium Association, Inc. ("Plaintiff" or "Garrison Village") is a non-profit Colorado corporation with its principal office in Englewood, Colorado.

3. Defendant, Maxum Indemnity Company ("Maxum"), is an insurance company organized and incorporated under the laws of and/or has its principle place of business in the state of Georgia and/or Delaware.

## JURISDICTION AND VENUE

4. This court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

5. Garrison Village is the duly organized homeowners' association for the development known as Garrison Village, which consists of sixteen two story condominium buildings (collectively the "Property").

6. Garrison Village purchased a Commercial Property Coverage Policy of insurance from Maxum under Policy Number PRO-0098380-01 (the "Policy"). A true and accurate copy of the Policy is attached hereto as **Exhibit "A."**

7. The Policy was issued with effective dates of January 1, 2017 through January 1, 2018.

8. The Policy is an all risk policy of insurance.

9. The Policy is a replacement cost value policy and covers loss to Garrison Village's Property.

10. The Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

11. The Policy does not require that the Property sustain functional damage for coverage to be afforded to direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

12. The Policy does not include a cosmetic exclusion or cosmetic endorsement.

13. Under the Policy, Maxum is obligated to pay for direct physical loss and damage to the insured Property resulting from hail and wind.

14. Under the Policy, Maxum agreed to adjust all losses with its insured fairly and timely.

15. Garrison Village paid the premiums due under the Policy in a timely manner.

16. Garrison Village performed all duties and responsibilities required of it under the Policy.

17. On or about May 8, 2017, during the Policy period, Garrison Village suffered direct physical loss and/or damage at the Property resulting from hail and/or wind.

18. The direct physical loss and/or damage resulting from the hail and/or wind constituted a covered loss under the Policy.

19. Garrison Village timely reported the covered loss and damage to Maxum, and made a claim for the loss and damage to the Property.

20. Maxum assigned Claim Number MSIZ-0011 to the Property loss.

21. Maxum retained York Risk Services Group ("York") to assist in the investigation and adjustment of Garrison Village's claim for direct physical loss and/or damage resulting from the hail and wind storm occurring on or about May 8, 2017.

22. Maxum retained an independent adjuster, JS Held, to assist in the investigation and adjustment of Garrison Village's claim for direct physical loss and/or damage resulting from the hail and wind storm occurring on or about May 8, 2017.

23. Garrison Village retained Claims Pro, a Colorado state licensed public adjusting firm, to assist it in the investigation and adjustment of its claim for direct physical loss and damage to the Property resulting from a hail and wind storm occurring on or about May 8, 2017.

24. On or about May 12, 2017, Maxum's representatives, JS Held and York, inspected the Property.

25. On or about May 15, 2017, the City of Wheat Ridge advised Garrison Village's contractor, Apex Denver Roofing, that city code would require the exterior wall insulation of the Property to be an R-3. A copy of the City of Wheat Ridge Correspondence is attached hereto as **Exhibit "B."**

26. On or about June 12, 2017, Maxum issued an initial advance payment to Garrison Village in the amount of $150,000.00.

27. On or about July 3, 2017, Garrison Village's representative, Claims Pro, provided Maxum with a copy of Garrison Village's first damage estimate which outlined $2,045,487.14 in replacement cost value covered damages. A copy of Garrison Village's First Damage Estimate is attached hereto as **Exhibit "C."**

28. On or about July 5, 2017, Maxum retained Higgins & Associates, Inc. ("Higgins"), to determine the applicable building code requirements with respect to the replacement of damaged vinyl exterior siding resulting from a hail and wind storm occurring on or about May 8, 2017.

29. Higgins is an outcome oriented engineering firm.

30. On or about July 25, 2017, Higgins conducted a site inspection of the Property.

31. Higgins did not conduct any destructive testing to determine the thickness of the stud walls during its site inspection.

32. Higgins did not conduct any destructive testing to determine the amount of insulation installed within the wall cavities during its site inspection.

33. Higgins concluded that hail damage to the Property requires siding replacement on the west sides of each of the sixteen buildings.

34. Higgins concluded that painting mismatched siding would achieve pre-loss condition.

35. Higgins repair recommendation would necessitate a five to seven year paint cycle for the remainder of the Property's useful life.

36. Despite failing to conduct any destructive testing or sampling, Higgins concluded that the building walls contained two by six exterior wall stud cavities.

37. Despite failing to conduct any destructive testing or sampling, Higgins concluded that the building walls contained R-20 insulation.

38. On or about July 27, 2017, Maxum provided Garrison Village with its first estimate which outlined $597,679.42 in replacement cost value covered damages. A copy of Maxum's First Damage Estimate is attached hereto as **Exhibit "D."**

39. On or about August 9, 2017, Maxum provided a copy of the Higgins report to Garrison Village. A copy of the Higgins Report is attached hereto as **Exhibit "E."**

40. On or about August 18, 2017, Maxum provided Garrison Village with its second damage estimate which outlined $869,526.25 in replacement cost value damages. A copy of Maxum's Second Damage Estimate is attached hereto as **Exhibit "F."**

41. On or about August 18, 2017, Maxum provided Garrison Village with a Proposed Statement of Loss which outlined replacement cost value damages in the amount of $874,898.48 and actual cash value damages in the amount of $637,878.72. A copy of the Proposed Statement of Loss is attached hereto as **Exhibit "G."**

42. Maxum's Second Damage Estimate included an additional $271,846.83 in covered damages that were not provided in Maxum's First Damage Estimate.

43. Maxum's failure to include $271,846.83 in covered damages within its First Damage Estimate that were subsequently identified in its Second Damage Estimate resulted in the delay of payment of $271,846.83 in covered benefits without a reasonable basis.

44. On or about August 21, 2017, Garrison Village provided Maxum with final invoicing for roofing and gutters, and requested release of depreciation holdback.

45. On or about September 18, 2017, Garrison Village's representative, Claims Pro, provided Maxum with photographs illustrating the exterior wall cavity depth of a building within the Property.

46. On or about September 18, 2017, Maxum advised Garrison Village that it was relying upon Higgins speculative conclusions and denying any damages related to insulation repairs of the Property.

47. On or about September 23, 2017, Garrison Village's representative, Claims Pro, requested Maxum provide photographs or measurements demonstrating the wall cavity contained within the building to be two by six framing.

48. On or about October 4, 2017, the City of Wheat Ridge advised Garrison Village's representative, Claims Pro, that Garrison Village would be required to add R-5 insulation to the exterior to meet current building code. A copy of the City of Wheat Ridge Correspondence is attached hereto as **Exhibit "H."**

49. On or about October 13, 2017, Maxum provided Garrison Village with its third damage estimate which outlined $902,920.47 in replacement cost value covered damages. A copy of Maxum's Third Damage Estimate is attached hereto as **Exhibit "I."**

50. Maxum's Third Damage Estimate included an additional $33,394.22 in covered damages that were not provided in Maxum's First and Second Damage Estimates.

51. Maxum's failure to include $33,394.22 in covered damages within its First and Second Damage Estimates that were subsequently identified in its Third Damage Estimate resulted in the delay of payment of $33,394.22 in covered benefits without a reasonable basis.

52. On or about April 4, 2018, Garrison Village provided Maxum with its second damage estimate which outlined $3,206,744.21 in replacement cost value covered damages. A copy of Garrison Village's Second Damage Estimate is attached hereto as **Exhibit "J."**

53. On or about April 4, 2018, Garrison Village provided Maxum with invoices for emergency mitigation to the Property in the amount of $57,056.92. A copy of Garrison Village's Emergency Mitigation Invoices is attached hereto as **Exhibit "K."**

54. Garrison Village retained Solutions Before Solutions After ("SBSA"), a Colorado licensed engineering firm, to determine within a reasonable degree of engineering certainty the scope of damages to the exterior wall claddings and appurtenances resulting from the hail and wind storm occurring on or about May 8, 2017.

55. SBSA performed site inspections on September 11, 2017, September 18, 2017, October 3, 2017, March 12, 2018, March 28, 2018, and June 8, 2018.

56. SBSA observed randomly distributed fractures and holes resulting form hailstone impacts to the vinyl siding and trim covering the Property.

57. SBSA observed indentations resulting from hailstone impacts to the gutters and downspouts on the Property.

58. SBSA observed fractures resulting from hailstone impacts to the trim, glazing beads, and window frames on the Property.

59. SBSA observed paint fractures resulting from hailstone impacts to the garage doors on the Property.

60. SBSA observed indentations and paint loss resulting from hailstone impacts to the sheet metal facia covering the Property.

61. SBSA performed intrusive examinations of the exterior of the Property to determine the exterior wall constructions and cavity insulations components.

62. SBSA determined the exterior wall framing was comprised of 2x4 nominal wood studs with an R-value of batt insulation within the wall cavity of R-13.

63. SBSA concluded that the following damage occurred to the Property as a result of the hail event occurring on May 8, 2017:

- Fractures and holes in vinyl siding and trim
- Fractures and holes in vinyl fencing
- Paint loss and fiber displacement on wood columns and trim at residence entrances
- Indentations on sheet metal gutters and downspouts
- Fractures and holes in plastic air conditioning housings
- Deformation of west facing fins of air conditioning units
- Indentations and paint loss on sheet metal fascia
- Paint loss on garage doors.
- Fractures in window trim, glazing beads, and frames
- Tears in window screens

64. SBSA concluded that isolated removal and replacement of only those horizontal lap siding panels that contain hail-caused damage will not produce a uniform and acceptable color appearance that was present at the time of the hail storm that occurred on May 8, 2017. A copy of SBSA's Report is attached hereto as **Exhibit "L."**

65. Maxum has failed to reasonably investigate Garrison Village's claim for damages to the Property resulting from a hail and wind storm occurring on or about May 8, 2017.

66. Maxum has ignored evidence of hail damage to the roofing systems covering the Property.

67. Maxum's failure to pay the claim in full has resulted in a breach of contract.

68. Maxum's failure to pay the claim in full has resulted, and continues to result, in additional damages to the Property.

69. Maxum's failure to pay the claim in full has resulted in financial hardship to Garrison Village.

70. Maxum's failure to pay the claim in full has resulted in an unreasonable delay and denial in covered benefits without a reasonable basis.

71. It is apparent from Maxum's conduct that Maxum has adopted a plan or approach to delay, as much as possible, its handling and payment of the claim.

72. Garrison Village has fulfilled all duties required of it under the Policy after discovery of the loss.

73. Garrison Village has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Maxum.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

74. Garrison Village realleges and reaffirms Paragraphs 1-73 as if fully set forth herein.

75. Garrison Village purchased an all risk policy requiring Maxum to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

76. The Policy between Garrison Village and Maxum is a binding contract.

77. Garrison Village paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Maxum.

78. Maxum has denied certain covered damages and continues to delay and deny certain claimed damages.

79. Maxum's failure to honor its obligations under the Policy is a breach of contract.

80. Maxum's breach of contract has damaged, and continues to damage Garrison Village.

81. Garrison Village is entitled to all benefits due and owing under the Policy.

**WHEREFORE**, Plaintiff, Garrison Village Condominium Association, Inc., respectfully requests this Court enter judgment against, Defendant, Maxum Indemnity Company, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**
**(Bad Faith Breach of Insurance Contract)**

82. Garrison Village realleges and reaffirms Paragraphs 1-81 as if fully set forth herein.

83. Under the Policy and Colorado law, Maxum had a duty to act reasonably and in good faith in the handling of Garrison Village's claim.

84. Under the Policy and Colorado law, Maxum had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Garrison Village and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

85. Under the Policy and Colorado law, Maxum owes Garrison Village the duty of good faith and fair dealing.

86. Maxum had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims.

87. Maxum sold Garrison Village the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

88. Maxum knew that Garrison Village purchased the Policy to protect its Property in the event of a loss.

89. Garrison Village has cooperated with Maxum in the processing of its claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

90. Garrison Village has cooperated with Maxum in the investigation of its claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

91. Garrison Village has not erected any obstacles to Maxum's ability to investigate Garrison Village's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

92. Garrison Village has not erected any obstacles to Maxum's ability to evaluate Garrison Village's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

93. Maxum disregarded the validity of Garrison Village's claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

94. Maxum failed to indemnify Garrison Village to its pre-loss condition.

95. Maxum failed to treat Garrison Village's interests with equal regard to its own.

96. Maxum mischaracterized the evidence to the benefit of itself.

97. Maxum failed to be open and honest in its dealings with Garrison Village.

98. Maxum failed to conduct a full, fair, and prompt investigation of the claim.

99. Maxum denied Garrison Village's claim without conducting a thorough investigation in an attempt to effectuate a deceptively low settlement.

100. Maxum denied Garrison Village's claim by failing to objectively evaluate Garrison Village's claim based on all available evidence, and not just evidence which Maxum believes supports its position.

101. Maxum decision to underpay the benefits owed to Garrison Village was intentional and not accidental.

102. Maxum failed to assist Garrison Village with the presentation of its claim.

103. Maxum breached its duty to act reasonably and in good faith by, inter alia,

    (a) Conducting an outcome oriented investigation of Garrison Village's loss
    (b) Denying Garrison Village's claim without having documented a reasonable investigation based upon all information
    (c) Providing a damage estimate that did not adhere to local building codes
    (d) Providing a damage estimate that did not adhere to the International Residential Code (IRC)
    (e) Providing a damage estimate that did not adhere to the International Building Code (IBC)
    (f) Providing a damage estimate that did not adhere to the International Energy Conservation Code (IECC)

104. Maxum failed to conduct a thorough and timely investigation of Garrison Village's claim in accordance with insurance industry claims handling standards and practices.

105. Among other circumstances, Maxum has committed unfair settlement practices including, without limitation:

    (a) Maxum has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;
    (b) Maxum has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
    (c) Maxum refuses to pay claims without conducting a reasonable investigation based upon all available information;
    (d) Maxum has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;
    (e) Maxum has compelled Garrison Village to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions by such insureds;
    (f) Maxum has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;
    (g) Maxum has misrepresented terms and conditions of the Policy in an attempt to influence its Insured to settlement for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and

  (h) Maxum encourages its claims representatives to engage in unfair claims settlement practices against its Insured, thereby violating applicable laws and regulations of the State of Colorado.

106. Maxum improperly set various claims handling goals to reduce the amount paid on claims.

107. Maxum improperly denied Garrison Village's claim to reduce overall claims payments.

108. Maxum improperly denied Garrison Village's claim to increase profits.

109. Maxum improperly denied Garrison Village's claim to maintain its loss ratio.

110. Maxum improperly denied Garrison Village's claim to meet department goals.

111. Maxum's conduct demonstrates that it was repeatedly aimed at benefiting itself to the detriment of Garrison Village.

112. Maxum improperly denied Garrison Village's claim by motivating its claims department to pay less on claims that are otherwise owed.

113. Maxum improperly denied Garrison Village's claim to reduce the average amount paid on overall claims.

114. Maxum has committed unfair claim settlement practices as alleged in the preceding paragraphs of Garrison Village's Complaint.

115. Maxum's conduct constitutes a bad faith breach of the insurance contract.

116. Maxum has committed such actions with such frequency as to indicate a general business practice.

117. As a direct and proximate result of Maxum's actions, Garrison Village has:

  (a) incurred increased costs to repair, restore and/or replace the significant property damage;

(b) suffered damages as a proximate result of the misconduct alleged; and
(c) suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, public adjuster costs and fees, investigatory fees, and other losses.

**WHEREFORE** Plaintiff, Garrison Village, Garrison Village Condominium Association, Inc., respectfully requests this Court enter judgment against Defendant, Maxum Indemnity Company, for damages resulting from bad faith breach of insurance contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

**THIRD CLAIM FOR RELIEF**
**(Unreasonable Delay and Denial of Payment of Covered Benefits**
**Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

118. Garrison Village re-alleges and reaffirms Paragraphs 1-117 as though fully set forth herein.

119. Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

120. Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

121. Garrison Village is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

122. Garrison Village suffered a loss covered by the Policy and submitted a claim for that loss to Defendant.

123. The claimed loss and damage submitted by Garrison Village was covered by the Policy and Garrison Village was owed covered benefits under the Policy.

124. Maxum delayed payment of covered benefits without a reasonable basis for its actions.

125. Maxum denied payment of covered benefits without a reasonable basis for its actions.

126. Among other circumstances, Maxum has unreasonably delayed and denied covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Garrison Village's Complaint.

127. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

128. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by failing to timely investigate its insured's loss.

129. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a denial letter without having documented a reasonable investigation based upon all information.

130. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by failing unnecessarily prolonging its investigation of Garrison Village's claim.

131. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by providing Garrison Village with an inadequate settlement offer.

132. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by omitting obvious covered damages in an effort to effectuate a deceptively low settlement.

133. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by failing to indemnify Garrison Village to a pre-loss condition.

134. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by providing damage estimates which did not adhere to local building codes.

135. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by providing two damage estimates which did not adhere to the International Residential Code (IRC).

136. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by providing two damage estimates which did not adhere to the International Building Code (IBC).

137. Maxum delayed and denied payment of covered benefits without a reasonable basis for its action by providing two damage estimates which did not adhere to the International Energy Conservation Code (IECC).

138. Despite clear evidence of covered damages to the Property, Maxum continued to delay and deny indemnification of its own insured without a reasonable basis for doing.

139. Maxum's actions in the adjustment of Garrison Village's claim demonstrates an unmistakable complete delay of Garrison Village's benefits without a reasonable basis for its actions.

140. Maxum unreasonably denied and delayed payment of covered benefits without a reasonable basis for its action by refusing to release recoverable depreciation to Garrison Village.

141. Maxum unreasonably denied and delayed payment of covered benefits without a reasonable basis for its action by forcing Garrison Village to retain its own professionals to help properly adjust the loss.

142. Despite receipt of Garrison Village's comprehensive estimate, Maxum denied and delayed payment of covered benefits without a reasonable basis for doing so.

143. Maxum unreasonably delayed and denied Garrison Village's claim to reduce overall claims payments.

144. Maxum unreasonably delayed and denied Garrison Village's claim to increase profits.

145. Maxum unreasonably delayed and denied Garrison Village's claim to maintain its loss ratio.

146. Maxum unreasonably delayed and denied Garrison Village's claim to meet department goals.

147. Maxum unreasonably delayed and denied Garrison Village's claim to reduce the average amount paid on overall claims.

148. Maxum unreasonably delayed and denied Garrison Village's claim by asserting coverage positions that it knew were without merit.

149. Maxum's actions were intended to dissuade Garrison Village in pursuing benefits due and owing under the terms of the policy in bad faith.

150. Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE** Plaintiff, Garrison Village, Garrison Village Condominium Association, Inc., respectfully requests this Court enter judgment against Defendant, Maxum Indemnity Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

### REQUEST FOR JURY TRIAL

151. Garrison Village requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 26th day of June, 2018

/s/ Jonathan E. Bukowski
Larry E. Bache, Jr., Esq.
Jonathan E. Bukowski, Esq.
Timothy G. Burchard, II
Colorado Bar No.: 48635
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: tburchard@merlinlawgroup.com